**UNITED STATES of America**

v.

**David F. LACE.**

**Crim. A. No. 79–44–1.**

United States District Court, D. Vermont.

Oct. 20, 1983.

Barry E. Griffith, Rutland, Vt., for petitioner.

Peter Hall, Asst. U.S. Atty., Rutland, Vt., for U.S.

MEMORANDUM OF DECISION

HOLDEN, District Judge.

David F. Lace has presented an application, pursuant to 28 U.S.C. § 2255, seeking release from federal custody following his

conviction as an organizer of a continuing criminal enterprise in violation of 21 U.S.C. § 848. The sentence of ten years without parole was imposed following his plea of guilty. The plea was tendered by way of a written agreement signed by the defendant, his attorney, and the United States Attorney. The negotiated plea preserved for appellate review all questions raised in numerous pretrial motions directed principally to the evidence gathered and seized prior to the indictment.

The facts which generated the constitutional claims presented on appeal are reported in *United States v. Lace*, 502 F.Supp. 1021 (D.Vt.), *aff'd* 669 F.2d 46, 47 (2d Cir.) *cert. denied*, — U.S. —, 103 S.Ct. 121, 74 L.Ed.2d 106 (1982).

The present motion challenges the judgment of conviction on the claim that the petitioner was persuaded to plead guilty by improper motivation of his retained counsel, Clifford J. Steele, Esquire, of Atlanta, Georgia, when this attorney learned that his brother, Wayne Steele, was named on the Government's list of prospective witnesses shortly before the scheduled trial date. The petitioner contends his attorney was under duress from fear that if Wayne Steele were called to testify he "stood an excellent chance of incurring criminal liability." According to the petition, this situation created a conflict of interest which deprived the petitioner of his right to effective assistance of counsel.

Upon the filing of the petition, the Government was directed to respond. Counsel was assigned to represent the movant under the Criminal Justice Act and an evidentiary hearing was held. Upon consideration of the record, the written and oral submissions by the parties and the evidence presented, the court finds the following facts.

David Lace first became acquainted with his trial counsel, Clifford Steele, by way of an introduction made by Wayne Steele at the latter's home in southern Vermont in 1975, at a time when Lace was involved in drug traffic. Lace was aware that Clifford

Steele was an attorney who practiced law in Buffalo, New York, and Atlanta, Georgia. At the time of their initial meeting Steele suggested that if Lace ever needed any help to call him. Sometime after this meeting Wayne Steele was indicted and pleaded guilty to a federal narcotic offense. Although Clifford Steele was present with other family members at the time Wayne was sentenced to imprisonment by this court on February 9, 1979, the accused was represented by other counsel of record throughout the prosecution. Prior to Wayne's conviction, he had engaged in drug trafficking with Lace and his associates. After Wayne was "busted," according to Lace they were "out of contact."

In the early morning hours of May 16–17, 1979, following his arrest, David Lace called his wife from the Vermont State Police barracks and instructed Mrs. Lace to contact his attorney, Clifford Steele in Atlanta. Steele called the petitioner as requested and continued to represent Mr. and Mrs. Lace by papers filed in this court as late as April 4, 1983.

From the outset, Wayne Steele was not entirely a stranger to these proceedings. He is referred to in the affidavit of the Vermont State Police submitted to the state district court judge in support of the request for a warrant to search the Sharon property. Before the suppression hearings got underway, David Lace, by his attorney, filed a motion to reserve his right to strike all references to Wayne Steele. The motion was advanced on the ground that the Government's reference to the name of Wayne Steele "would cause irrevocable injury and prejudice to defendant David Lace." During the fourteen days of suppression hearings Wayne Steele's arrest at the instance of Special Agent Handoga of the Drug Enforcement Agency was referred to in Handoga's cross-examination by Clifford Steele. Counsel's motion to strike the answer was denied.

On December 19, 1980, at a hearing [1] ordered by the court on its own initiative to

1. Sometime during November, 1980, the court

became aware that Robert A. Citronberg, Esq.,

resolve a possible potential conflict of interest in an entirely different context, counsel for David Lace requested an order from the court to preclude the Government ... "from mentioning the name of Wayne Steele or any attorney of record upon trial ...."

The pretrial brief urged that any reference to Wayne Steele would be immaterial and unnecessary to the deposition of the case and would be highly prejudicial to the defendant. The motion concluded with the request that the motion be heard *in camera* and be sealed until the close of the trial.

At the hearing which followed in open court, the Government resisted the motion as an effort to restrict the prosecution's proof of an ongoing criminal enterprise in which Wayne Steele might be shown to be a participant. The court made the observation that from the extended evidentiary hearings that had gone before, there was no apparent basis for linking or showing the blood relationship between Wayne Steele and counsel for the defendant Lace.

The Assistant United States Attorney undertook to assure the court and counsel for Lace that the observation was correct. Mr. Hall went on to state that if the point became relevant, the Government would present the matter out of the presence of the jury. Further, the Government would instruct its witnesses to avoid any gratuitous reference "to the fraternal relationship between ... Mr. Clifford Steele and his brother Wayne Steele." To this assurance, Mr. Steele responded: "In that connection I don't think I could ask for more, your Honor."

The court declined to rule *in limine* that mention of Wayne Steele could not be made. However, the attorney for the prosecution was instructed to withhold any evidence or reference to Wayne Steele until counsel for the defendant was afforded the opportunity to deal with the offer out of the presence of the jury. When the court inquired if there were any other matters for the court to take up before trial, Mr. Steele responded he had no other business to take up at that time.

On December 30th the defendant Gary Butts requested and was granted leave to withdraw his prior plea of not guilty to the first count of the indictment. The plea was accepted and the case continued for sentencing of this defendant.

On January 2, 1981, the defendant Lace and his co-defendant Ducharme returned to court with their respective attorneys to request permission to change their pleas to the continuing criminal enterprise count from innocent to guilty, pursuant to a writ-

of Atlanta, Georgia, who had appeared as co-counsel in earlier proceedings as professional associate of Robert Fierer, changed that association to undertake professional employment by Clifford Steele. At the time of that change Mr. Citronberg had participated extensively in the suppression hearings as co-counsel for Gary Butts, a co-defendant in *United States v. Lace, Ducharme, Butts, et al.* To resolve the potential conflict of interest that could complicate the impending trial, the court entered an interlocutory order December 9, 1980, directing the defendants David Lace, Gary Butts, and their respective attorneys of record to appear at Rutland on December 19, 1980 "to enable the court to inquire into the possible joint representation arising from Mr. Citronberg's past and present employment."

In response to the court's order, David Lace filed an affidavit explaining his total awareness of the possible conflict of interest from the employment of Citronberg. Lace further stated that he had

no objection to the continued representation of the Defendant Butts by Robert G. Fierer, Esq., nor does the deponent [Lace] have any objection to the continued representation of your deponent by Clifford J. Steele, Esq.

. . . . .

That your deponent makes this election and waiver knowingly after full discussion of the facts of this matter with your deponent's attorney, Mr. Steele.

At the hearing in open court which followed, after notice to the defendants, their counsel, including Lace's local counsel of record, James Carroll, Esquire, of Rutland, the court inquired of the defendant Butts. Lace did not appear in person but was represented by Mr. Steele, who submitted the affidavit referred to above. Since it appeared there was no conflict of interest, the court allowed the representation of David Lace by Steele and Butts by Fierer to continue as the case proceeded to trial.

ten plea agreement.[2] At that time the defendant's plea of guilty to Count 3 was offered and accepted. The defendant Lace answered under oath that his plea was voluntarily made without threat, persuasion or influence from any source.

The plea agreement was signed by the United States Attorney and by the defendant personally. It specifically preserved for appellate review eight principal issues presented and decided after protracted suppression hearings. The plea agreement was further conditioned that the defendant should receive a sentence for a period of incarceration not to exceed ten years, less allowance for good time earned. It was further provided that the defendant be released on bail, pending exhaustion of appellate review, in the amount of $50,000 to be secured by a deposit of 7% cash or other security. In the event the agreement was not accepted by the court, the defendant reserved right to withdraw the plea tendered and proceed to the trial already scheduled. See appendix attached.

At the hearing on the change of plea the court explored in depth the substance of the plea agreement. The defendant Lace expressed his complete understanding that the maximum penalty that could be imposed upon conviction for violation of the offense charged in Count 3 was life imprisonment; the mandatory minimum punishment was ten years with suspension of sentence, probation and parole prohibited. Lace acknowledged he understood these provisions, as well as his exposure to a fine of $100,000 and forfeitures specified in 21 U.S.C. § 848 and all possible consequences in the event his plea was accepted.

Clifford Steele represented the petitioner throughout the course of the appeal and after remand in presenting motions in his client's behalf as recently as April 4, 1983. During the full course of this criminal action David Lace has been represented by Clifford Steele and local counsel of record, James P. Carroll, Esquire, of Rutland. At no time has there been any indication to the court that Clifford Steele represented his brother Wayne in an attorney and client relationship. And until the present petition under 28 U.S.C. § 2255, filed after the commencement of the service of the committed sentence, there has not been any suggestion of divided loyalty on the part of his retained counsel.

Upon adequate showing of financial and probative need, Clifford Steele was summoned and testified at the evidentiary hearing on the petition September 11, 1983. He testified that when Wayne Steele was previously indicted and convicted in this court in 1979, he assisted his brother in obtaining an attorney to represent him. Clifford was present in court with other members of the Steele family when Wayne was sentenced.

When reference to Wayne first surfaced in the Lace case in January, 1980, Clifford testified he was annoyed and embarrassed and so indicated to the court and Government counsel. Later Clifford Steele was furnished a list of some fifty witnesses that the Government indicated it might call at time of trial. In mid-December, 1980, a supplemental list was supplied which included the name of Wayne Steele. Later, when Wayne was served with a subpoena to appear, he inquired of Clifford about it. Clifford testified that from his investigation and preparation for trial of the case, he didn't believe the Government would call his brother. He was concerned about the practical problems that would develop if the United States Attorney pursued that course. Clifford Steele informed Lace of the problem and asked Lace if there was any possibility that Wayne could present relevant evidence in the prosecution's case. Clifford Steele further advised Lace that if the court allowed Wayne to testify, Clifford would have to request the court's permission to withdraw as counsel for Lace because of its possible detrimental effect on Lace's defense.

Prior to the time of trial and after the plea of the codefendant Butts, counsel for both defendants Lace and Ducharme

---

**2.** The conditional plea was made prior to the amendment added by Rule 11(a)(2), Federal Rules of Criminal Procedure, which became effective August 1, 1983.

opened plea discussions with the Government attorneys. The Government would only acquiesce in pleas of guilty to a violation of the criminal enterprise count, 21 U.S.C. § 848. Steele testified his client had a lot of reservations about the mandatory ten year sentence. Initially he wanted to proceed to trial. As the time of trial approached Lace changed his mind. Counsel for both Ducharme and Lace discussed the proposed plea agreement in the presence of their clients. Steele testified that the Government's case against Lace on the continuing criminal enterprise charge was "thin" as to petitioner, but strong as to Ducharme. He was convinced that Lace would be swept along with Ducharme's guilt. However, he testified that in counseling his client to enter the plea agreement, he was guided by the facts.

The facts presented at the suppression hearings, including David Lace's testimony, sustained every aspect of the charge to which the plea was offered. It appeared that this defendant remained in the wings, so to speak, during the period of surveillance of the Sharon headquarters. However, at the time of his arrest he was very much on center stage. He and his partner Ducharme unwittingly rode directly into the center of an ongoing search and seizure of vast quantities of hashish and marijuana. The trunk of the vehicle in which they were riding yielded some $185,000 in cash in a consensual search. He later volunteered that the Vermont State Police had "apprehended the biggest people in Vermont." In the presence of the incriminating facts developed and reported by the court following the suppression hearing, it is clear that the counseled plea was not ill advised.

In pursuing this strategy, there is no indication that the inclusion of the name of Wayne Steele on the witness list provided by the Government was a factor. The record is abundantly clear that of more compelling effect was the adverse outcome of the suppression hearings; the plea of guilty by Gary Butts, who participated as a principal lieutenant of the Lace-Ducharme operation; and the exposure of the defend-

ant to prolonged confinement beyond the ten-year minimum.

In sum, the petitioner is a well educated and well informed person. He indicated in his affidavit, that appears in the margin, that he understood the legal implications of a potential conflict of interest. He assured his attorney, who was retained by reason of the defendant's connection with Wayne Steele, that he knew of nothing that Wayne could offer that would have probative inculpatory effect at the impending trial. There is no evidence in the case that Lace's attorney was ever retained in a professional capacity to represent Wayne Steele in any transaction that might implicate David Lace in the impending trial.

Beyond that, there was no present danger that Wayne Steele would be called as a witness for the prosecution. At the pretrial hearing the defense exacted a firm commitment from the Government that no reference to Wayne Steele would be made in the presence of the jury. Counsel representing the Government, as well as Mr. Lace's attorney, shared mutual concern to avoid any possible prejudice from this source. While potential prejudice was often referred to, the question of conflict of interest arising from the blood relationship between Wayne and Clifford Steele was not presented to the court.

### Conclusion

 The voluminous record in this case yields no proof of any multiple representation on the part of the petitioner's counsel. To be sure, Clifford Steele conferred with Wayne Steele as soon as he was listed as a prospective witness. But no conflict of interest is generated by the interview of a witness. Absent some explicit facts pointing in this direction, the court perceived no obligation to search for a conflict beyond the possibility of prejudicial embarrassment; that was the context in which the witness list was called to the court's attention.

Unless the trial court knows or reasonably should know that a particular con-

flict exists, the court need not initiate an inquiry.

*Cuyler v. Sullivan,* 446 U.S. 335, 347, 100 S.Ct. 1708, 1717, 64 L.Ed.2d 333 (1980).

In order to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance.... [T]he possibility of conflict is insufficient to impugn a criminal conviction.

*Id.* at 348–50, 100 S.Ct. at 1718–19. Compare *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981) (Possibility of conflict of interest at probation revocation hearing for failure to pay fine where multiple defendants represented by lawyer paid by their employer who agreed to pay the fines.).

■ The standard for determining the constitutional validity of a guilty plea is found in the very case which both Lace and Ducharme cited to the court at the time their respective pleas of innocence were changed to guilty.[3] The avowed reason for acknowledging guilt was to avoid the danger of a more severe penalty than that prescribed in the written plea agreement in keeping with *North Carolina v. Alford,* 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970).

The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.

*Id.* at 31, 91 S.Ct. at 164; *Kelleher v. Henderson,* 531 F.2d 78, 81 (2d Cir.1976).

**3.** THE COURT: Now, having in mind the Court's discussion here regarding your rights and the subject of the written plea agreement that's been submitted for the Court's consideration, do you, as charged in Count 3, Mr. Lace, acknowledge that you are guilty to that count?
MR. LACE: First of all, I'd like to correct my last answer. Realizing that the reason why I answered to that question is that I am on the understanding that I could get a greater sentence than—
THE COURT: Yes.
MR. CAMBRIA: I think that's the same for both the defendants, your Honor.

■ The petitioner David Lace acknowledged to the court that his plea of guilty to the criminal enterprise count stated in the indictment was voluntary, knowingly made and was tendered to the court to avoid the grave danger that confronted him if the case proceeded to trial on all of the counts charged. The accused had little, if anything, to gain by a trial and much to be derived by pleading. As Justice White's opinion in *Alford* points out:

Because of the overwhelming evidence against him, a trial was precisely what neither Alford nor his attorney desired.

400 U.S., *supra* at 37, 91 S.Ct. at 167.

The written plea agreement and the hearing which followed, made known the options open to the defendant. The choice he made was clear and voluntary. The plea was tendered with full awareness of the consequences, reserving at the same time the right to extensive appellate review. The full record fails to establish that the petitioner's right to assistance of counsel, electing to enter a plea of guilty to a single count of the indictment was impaired by any conflict of interest or division of loyalties. The petition must be dismissed. It is so ORDERED.

This Memorandum of Decision shall constitute the findings and conclusions required by Fed.R.Civ.P. 52(a).

## APPENDIX

### UNITED STATES DISTRICT COURT FOR THE DISTRICT OF VERMONT

MR. LACE: Yes. I admit to this plea for the purpose of entering this plea and avoiding greater punishment as provided by the United States Supreme Court in *North Carolina v. Alford.*
THE COURT: Your counsel, I take it, has fully advised you regarding that?
MR. LACE: Yes, sir.
THE COURT: Mr. Ducharme?
MR. DUCHARME: For the purposes of entering this plea, avoiding greater punishment as provided by the United States Supreme Court in *North Carolina v. Alford.*
Rule 11(e) plea agreement proceeding, Tr. at 43.

UNITED STATES OF AMERICA

—vs—

DAVID F. LACE
ROGER R. DUCHARME
GARY BUTTS
PATRICIA ECKMAN CRIMINAL NO. 79–44–1
DAVID SOUTHAM
DANIEL T. LACE
JOHN RADZIKOWSKI
PAUL RYZEWIC
GLENN POLLACK
 Defendants

## PLEA AGREEMENT OF DAVID F. LACE

The Government, by and through its attorney, WILLIAM B. GRAY, and Defendant, DAVID F. LACE, agree as follows, and respectfully request this Court to accept such agreement in full:

A. That the Defendant, DAVID F. LACE, will enter a plea of guilty to Count III of the Indictment, 21 U.S.C., Section 848, upon the condition that each and all of the following occur:

(1) Counts I and II of the said indictment alleging violation of 21 U.S.C., Sections 841 and 846 be, in all respects, dismissed at the time of sentencing.

(2) That said plea shall be in full satisfaction of the acts, facts, and transactions set forth in said indictment.

(3) That the Defendant shall preserve, reserve, and be, in all respects, fully entitled to appeal each and every issue concerning the acquisitions of all evidence in support of and relating to the indictment, or acquired by agents of the Vermont State Government and any of its political subdivisions, as well as of the Government of the United States of America, including each and every such issue relating to and raised by pre-trial motions, both oral and written, and during the course of the pre-trial proceedings, including the validity and legality of the various search warrants and searches and seizures conducted in the absence of a warrant, and specifically including, but not limited to, the following:

(a) Acquisitions of evidence at the premises located at Sharon, Vermont.

(b) The acquisition of evidence from the person of David Lace.

(c) The acquisition of evidence from the 1978 Mercury Marquis automobile registered to David F. Lace, including such acquisitions on or about May 16, 1979.

(d) The warrant and warrantless stopping, search and seizure of the 1975 Ford LTD vehicle owned by the Defendant, Roger R. Ducharme, and including the time during which such vehicle was driven by Patricia Eckman, on or about May 16 and 17, 1979, and the acquisition of its contents at that time and later that evening by government officials.

(e) The warrant and warrantless search and seizure of a residence and its contents owned by the Defendant, Roger R. Ducharme, located in Quechee, Vermont.

(f) Any and all search and seizure issues raised regarding government's Exhibits I and II received in evidence at the time of the pre-trial hearings.

(g) Any statements alleged to have been made by David F. Lace.

B. That the total punishment the Defendant shall receive will be a sentence to a period of incarceration not to exceed ten years, less the good time allowance set forth in Title 18, Section 4161, more specifically the last subdivision thereof pertaining to good time for terms of ten years or more.

C. That nothing further shall be required of the Defendant as a condition hereof.

D. That the Defendant shall be released on bail pending the exhaustion of his appellate rights and shall be required to issue a bail bond in a total amount not to exceed FIFTY THOUSAND DOLLARS ($50,-000.00), (credit being given for the current bail bond in the amount of $25,000.00), and to deposit in the registry of the Court, in cash or other securities, as directed, a sum not to exceed seven per centum of the Fifty Thousand Dollar bail bond, said sum to be

reduced by the amount of cash already deposited by the Defendant in connection with the current bail bond, and such deposit would be released to the Defendant's attorney, Clifford J. Steele, upon performance of the conditions of release.

E. That if said agreement, as set forth above, is not fully accepted by the Court, the Defendant will be entitled to withdraw any such plea and to, in all respects, revert to his current status.

UNITED STATES OF AMERICA
By: <u>William B. Gray</u>
William B. Gray
United States Attorney
By: <u>Peter W. Hall</u>
Peter W. Hall
Asst. U.S. Atty.
<u>David F. Lace</u>
Defendant, David F. Lace